NOT DESIGNATED FOR PUBLICATION

Nos. 123,506
123,510

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SWKI-SEWARD WEST CENTRAL, INC.
and SWKI-STEVENS SOUTHEAST, INC.,
*Appellees*,

v.

KANSAS CORPORATION COMMISSION,
*Appellant*,

and

ANADARKO NATURAL GAS COMPANY LLC,
*Appellee.*

SWKI-SEWARD WEST CENTRAL, INC.
and SWKI-STEVENS SOUTHEAST, INC.,
*Appellees*,

v.

KANSAS CORPORATION COMMISSION,
*Appellee*,

and

ANADARKO NATURAL GAS COMPANY LLC,
*Appellant.*

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARY E. CHRISTOPHER, judge. Opinion filed April 8, 2022. Affirmed and remanded with directions.

*Brian G. Fedotin*, general counsel and special assistant attorney general, Kansas Corporation Commission, for appellant/appellee Kansas Corporation Commission.

*James P. Zakoura* and *Connor A. Thompson*, of Smithyman & Zakoura, Chartered, of Overland Park, for appellee/appellant Anadarko Natural Gas Company L.L.C.

*Timothy J. Sear*, *Frank A. Caro*, *Anne E. Callenbach*, and *Andrew Schulte*, of Polsinelli PC, of Kansas City, Missouri, for appellees SWKI-Seward West Central, Inc. and SWKI-Stevens Southeast, Inc.

Before MALONE, P.J., POWELL and ISHERWOOD, JJ.

POWELL, J.: SWKI-Seward West Central, Inc. (SWKI-SWC) and SWKI-Stevens Southeast, Inc. (SWKI-SE) (collectively the SWKIs) and Anadarko Natural Gas Company (Anadarko) entered into two gas sales agreements in 1998 and 2002. The SWKIs alleged Anadarko failed to file the contracts with the Kansas Corporation Commission. The Commission dismissed the complaint for failure to state a claim. The district court affirmed the Commission, but a prior panel of our court remanded the case to the Commission to determine whether the contracts were properly filed and, if not, whether a remedy was appropriate. The Commission issued an order denying the SWKIs' complaint, finding Anadarko did not file the contracts, but that it lacked the statutory authority to order a remedy. Following the SWKIs' petition for judicial review, the district court reversed, finding the Commission did not comply with the panel's mandate. Both the Commission and Anadarko have appealed in separate cases which we have consolidated. After a careful review of the record, we affirm the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts here were explained in detail in the first appeal, *SWKI-Seward West Central, Inc. v. Kansas Corporation Comm'n*, No. 116,795, 2018 WL 385692 (Kan App.

2018) (unpublished opinion). Because the parties are well acquainted with the facts, we repeat only those facts necessary for background and to settle the current issues before us.

SWKI-SE entered into a gas purchase agreement with Anadarko Energy Services Company, a company related to Anadarko, in 1998. In 2002, SWKI-SWC entered into a similar contract with Anadarko.

In 2013, Anadarko and Black Hills Energy filed a joint application with the Commission, seeking approval of Anadarko's sale of its assets and assignment of its customer contracts in exchange for a portion of its service territory. The SWKIs' agreements were among those contracts. During consideration of the application, the Commission's staff reported it could not find any Commission order approving the gas sales contracts Anadarko was seeking to transfer.

The SWKIs filed a complaint with the Commission against Anadarko, asserting Anadarko provided gas to them based on contracts never filed with or approved by the Commission. The SWKIs also claimed the price they paid was significantly higher than the price Anadarko charged other customers. The SWKIs requested the Commission find all rates charged by Anadarko were unlawful, void, and subject to refund, with interest.

Anadarko moved to dismiss the complaint for failure to state a claim. The Commission agreed and dismissed the complaint. The SWKIs timely sought reconsideration, but the Commission denied the motion. The SWKIs then petitioned for judicial review of the Commission's order in Stevens County District Court. Having been granted permission to intervene, Anadarko successfully transferred the case to the Shawnee County District Court. The district court denied the SWKIs' petition, and the SWKIs appealed.

3

A prior panel of our court concluded the Commission erred in relying on K.S.A. 66-154a in evaluating Anadarko's obligations to the SWKIs and held that a complaint alleging a public utility's rates or regulations are unlawful is equivalent to alleging the rates are unreasonable, unfair, or unjust. Thus, according to the panel, the Commission erred when it dismissed the SWKIs' complaint for failure to state a claim. 2018 WL 385692, at *9. Moreover, the panel explained that under the filed rate doctrine, when "a reasonable rate goes unfiled, the Commission has the statutory authority to order a remedy, . . . which may include the time value of money paid by the customer pursuant to an unfiled rate." 2018 WL 385692, at *13. The panel remanded the case with directions for the Commission to determine whether the contracts were ever filed and approved by the Commission and, if not, whether the SWKIs were entitled to a remedy for Anadarko's violations. 2018 WL 385692, at *14.

On remand, after an investigation, the Commission found the 1998 and 2002 gas service agreements had not been timely filed. But despite this court's holding to the contrary, the Commission stated it was only empowered to establish rates that are just and reasonable under K.S.A. 66-154a and the SWKIs never alleged the contract rates were unreasonable, unfair, unjust, unjustly discriminatory, or unduly preferential. As the Commission found both parties performed their obligations under the agreements, it believed granting a refund to the SWKIs would be equivalent to adjusting the rates and was beyond the Commission's authority. Because the parties fully performed the contracts, the Commission found the contracts were valid. The Commission also found the SWKIs were seeking equitable relief and the proper forum under the gas service agreements was arbitration in Houston, Texas, not the Commission.

The SWKIs sought reconsideration of the Commission's order, but this was denied. The SWKIs then petitioned for judicial review in the Shawnee County District Court.

The district court held the Commission erred by relying on K.S.A. 66-154a and by ignoring this court's holding that a complaint alleging rates are unlawful is consistent with asserting such rates are unreasonable, unfair, or unjust. The district court also found the Commission's order lacked specific evidence supporting its finding that Anadarko's rates were reasonable. Addressing the filed rate doctrine, the district court found the Commission had failed to apply the filed rate doctrine as it was supposed to. The district court also directed the Commission to hold a hearing on remand.

Both the Commission and Anadarko timely appeal.

ANALYSIS

The Commission and Anadarko bring separate appeals from the district court's order granting the SWKIs' petition for judicial review. Both assert the district court erred when it found the Commission did not follow the mandate from the prior panel. We consolidated these appeals after oral argument.

Appeals from actions of the Commission are reviewed according to the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. K.S.A. 66-118c. We exercise the same statutorily limited review of agency action as the district court, as though the appeal was made directly to us. *Romkes v. University of Kansas*, 49 Kan. App. 2d 871, 880, 317 P.3d 124 (2014). The KJRA is the exclusive means of judicial review of an agency's action. K.S.A. 77-606. The party asserting the invalidity of the agency action holds the burden to prove that action was invalid. K.S.A. 77-621(a)(1).

K.S.A. 77-621(c) lists eight reasons entitling a court to grant relief from an agency action. Of those eight reasons, the SWKIs relied on five in their petition for judicial review to the district court:

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious." K.S.A. 77-621(c)(3)-(5), (7)-(8).

K.S.A. 77-621(d) defines "'in light of the record as a whole'" to mean:

"[T]he adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review."

I.    DO WE HAVE JURISDICTION TO HEAR THE COMMISSION'S APPEAL?

After the Commission and Anadarko filed their notices of appeal, the SWKIs asked us to dismiss their appeals on the grounds that we lacked jurisdiction to hear them. Our court's motions panel denied the motion but directed the parties to brief the jurisdiction issue.

The Commission does not address the jurisdictional issue in its primary brief, but, in its reply brief, the Commission asserts that exceptional circumstances to *Holton Transport, Inc. v. State Corp. Commission*, 10 Kan. App. 2d 12, 690 P.2d 399 (1984), apply here, allowing us to hear this appeal because the district court's decision and this appeal address whether the Commission properly complied with the mandate.

Anadarko offers several avenues to jurisdiction. First, Anadarko briefly mentions that the district court's decision was a final decision making it reviewable. Second, Anadarko claims jurisdiction exists as an interlocutory appeal under K.S.A. 2020 Supp. 60-2102(c). Third, Anadarko argues we may hear the appeal under the collateral order doctrine.

Relying on *Holton*, the SWKIs claim the district court's order is not appealable because it is not a final order as the district court remanded the matter to the Commission for additional factual findings. See 10 Kan. App. 2d at 13. The SWKIs also note the district court refused to certify an interlocutory appeal. Finally, the SWKIs assert Anadarko fails to show how the district court's order would be "effectively unreviewable on appeal from a final judgment" under the collateral order doctrine.

*Standard of Review*

The right to appeal is statutory, with legislatively imposed limits to appellate jurisdiction. The existence of appellate jurisdiction presents a legal question over which we exercise de novo review. *In re Care and Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017).

*Analysis*

The right to appeal in civil cases is neither a vested nor a constitutional right but must be defined by statute. *Wiechman v. Huddleston*, 304 Kan. 80, 86, 370 P.3d 1194 (2016). Under K.S.A. 77-623, "[d]ecisions on petitions for judicial review of agency action are reviewable by the appellate courts as in other civil cases."

Kansas law provides two ways a party can pursue an appeal in a civil case—after a final decision or upon certification from the district court for an interlocutory appeal. K.S.A. 2020 Supp. 60-2102(a)(4), (c). Both the Commission's and Anadarko's docketing statements state their authority for seeking an appeal is a final decision under K.S.A. 60-2102(a)(4). The Commission did not seek an interlocutory appeal, and, in any event, the district court denied Anadarko's motion to certify an interlocutory appeal, finding its order was final.

A final decision is "'one which finally decides and disposes of the entire merits of the controversy, and reserves no further questions or directions for the future or further action of the court.' [Citation omitted.]" *Kansas Medical Mutual Insurance Co. v. Svaty*, 291 Kan. 597, 610, 244 P.3d 642 (2010). "The term 'final decision' is self-defining and refers to an order that definitely terminates a right or liability involved in an action or that grants or refuses a remedy as a terminal act in the case. [Citation omitted.]" *Kaelter v. Sokol*, 301 Kan. 247, 250, 340 P.3d 1210 (2015).

Interlocutory appeals are disfavored in the administrative process. *Southwestern Bell Tel. Co. v. Kansas Corporation Commission*, 6 Kan. App. 2d 444, 452, 629 P.2d 1174 (1981). The SWKIs rely on *Holton* to support their lack of jurisdiction argument. In *Holton*, the appellant sought relief from a district court order remanding the matter to the Commission for more specific factual findings. The *Holton* panel noted the general rule is that remand orders are not appealable except in exceptional circumstances. The panel

found there was not a final order which finally decided and disposed of the entire merits of the case. 10 Kan. App. 2d at 12-13. As a result, the panel held that, "absent exceptional circumstances, a district court order remanding a proceeding to the Kansas Corporation Commission for further findings is not a final decision appealable as of right under K.S.A. 60-2102(a)(4)." 10 Kan. App. 2d at 13.

Here, the district court remanded the case to the Commission for additional factual findings, but the district court's order did so in the context of finding the Commission did not comply with the mandate. Thus, the remand was about more than factual findings; it was about whether the Commission complied with the directions from this court. Compliance with an appellate mandate was not at issue in *Holton*.

When an appellate court's decision becomes final, the mandate and opinion "shall be controlling in the conduct of any further proceedings necessary in the district court." K.S.A. 60-2106(c). The appellate mandate ensures lower courts do not ignore an appellate order; it does not set up broad limits on subject matter jurisdiction on remand. *State v. Soto*, 310 Kan. 242, 252, 445 P.3d 1161 (2019). "'[Thus, it] is axiomatic that on remand for further proceedings after a decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal.'" 310 Kan. at 253. Lower courts "'must implement both the letter and spirit of the mandate,'" accounting for the appellate court's opinion and its circumstances. 310 Kan. at 253.

Agencies also must comply with appellate mandates. See *Leffel v. City of Mission Hills*, 47 Kan. App. 2d 8, 16, 270 P.3d 1 (2011). In its petition for judicial review, the SWKIs asserted the Commission ignored the mandate. The district court agreed and remanded the case for the Commission to take actions to comply with the mandate. The district court remanded the case for additional factual findings but only because it found the Commission failed to comply with the appellate mandate. Though the district court's

9

order does not finally determine the issues, a holding that the Commission's order did comply with the appellate mandate would be finally determinative of the case. And we have the jurisdiction to decide whether the appellate mandate was followed. See *Sierra Club v. Mosier*, 305 Kan. 1090, 1105, 391 P.3d 667 (2017).

Anadarko raises an alternate path to jurisdiction under the collateral order doctrine. The collateral order doctrine is a "'very narrow exception' to the final order requirement." *Svaty*, 291 Kan. at 611. This "'"small class" of collateral rulings that, although they do not end the litigation, are appropriately deemed "final."' [Citations omitted.]" 291 Kan. at 612. "[T]o be collaterally appealable, the order must '"(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment."' [Citations omitted.]" 291 Kan. at 612. The collateral order doctrine is rarely applied. The Supreme Court has "emphasized that a party is in a risky position when relying on the collateral order doctrine." 291 Kan. at 612.

We conclude the collateral order doctrine is inapplicable here because whether the Commission complied with this court's mandate is determinative of the case and is not completely separate from the merits but tied to it. If we agree with the district court that the Commission failed to comply with the mandate, that resolves the appeal. Thus, we hold we have the jurisdiction to determine whether the Commission complied with the appellate mandate.

II.    DID THE DISTRICT COURT ERR WHEN IT FOUND THE COMMISSION DID NOT COMPLY WITH THE COURT OF APPEALS' MANDATE?

The Commission asserts it complied with the appellate mandate and the district court erred by misinterpreting the mandate. The Commission claims the district court

ordered it to determine the appropriate remedy under the filed rate doctrine, while the mandate instructed the Commission to determine whether a remedy was appropriate.

Anadarko offers us three reasons why the Commission complied with the mandate. First, Anadarko asserts the Commission complied with the mandate by finding the Commission could not order a remedy because the SWKIs never alleged the rates in the gas service agreements were unreasonable, unfair, unjust, unjustly discriminatory, or unduly preferential. Second, Anadarko argues the Commission was not required to hold an evidentiary hearing because the Commission did not utilize the Kansas Administrative Procedure Act (KAPA), K.S.A. 77-501 et seq., in deciding the SWKIs' complaint and K.S.A. 66-1,205 only requires a hearing when the Commission is making changes to rates. Third, Anadarko argues the district court erred when it ordered the Commission to apply the filed rate doctrine on remand.

For their part, the SWKIs agree with the district court's finding that the Commission failed to follow the mandate. The SWKIs complain:  (1) The Commission's finding that the contract rates were reasonable because both parties performed was erroneous; (2) it was error for the Commission to refuse to hold a hearing; and (3) the Commission erred by refusing to apply the filed rate doctrine.

*Standard of Review*

The interpretation of a mandate and the determination whether the mandate was complied with involves legal questions which we review de novo. *In re Estate of Einsel*, 304 Kan. 567, 584, 374 P.3d 612 (2016); *Fawcett Trust v. Oil Producers, Inc. of Kansas*, 58 Kan. App. 2d 855, 865, 475 P.3d 1268 (2020), *rev. granted* 313 Kan. 1040 (2021). "[A]bsent specific direction by the appellate court, the trial court possesses discretion in implementing the mandate." *Leffel*, 47 Kan. App. 2d at 16.

11

*Analysis*

At the end of its opinion, the prior panel of this court issued its directions to the Commission:

> "Accordingly, we reverse the Commission's order finding that the SWKIs had failed to state a valid claim for relief and remand for additional proceedings to determine if the contracts were ever filed and approved by the Commission. If not, the Commission is directed to determine, in its discretion, if the SWKIs are entitled to a remedy for Anadarko's violations." *SWKI*, 2018 WL 385692, at *14.

On remand, the Commission found the 1998 Gas Sales Agreement was not timely filed and the 2002 Gas Sales Agreement was never filed with the Commission. No party disputes those conclusions. But the Commission then found the SWKIs were not harmed because both parties fully performed and the SWKIs never claimed the gas was defective or substandard or that the price was unreasonable. The Commission held it was only empowered to establish rates that are just and reasonable, and, since the SWKIs did not allege the rates were unreasonable, unfair, unjust, unjustly discriminatory, or unduly preferential, the Commission lacked the authority to grant a refund. The dispute before us centers on whether the Commission complied with the appellate mandate in reaching this decision.

Under Kansas law, on remand, a mandate and opinion from an appellate court is controlling in any further necessary proceedings. K.S.A. 2020 Supp. 60-2106(c). "On remand, '[a] trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.' [Citation omitted.]" *Gannon v. State*, 303 Kan. 682, 703, 368 P.3d 1024 (2016).

The mandate rule is "'[t]he doctrine that, after an appellate court has remanded a case to a lower court, the lower court must follow the decision that the appellate court has

12

made in the case, unless new evidence or an intervening change in the law dictates a different result.'" *Fawcett Trust*, 58 Kan. App. 2d at 861; Black's Law Dictionary 1150 (11th ed. 2019). Put another way, the higher court's "view of the law controls over that of the lower court." 58 Kan. App. 2d at 861.

The mandate rule shows how the law-of-the-case doctrine applies, binding a district court to the appellate court's opinion as the law of the case and requiring it to carry out the appellate court's order according to the appellate court's mandate. 58 Kan. App. 2d at 861; see *Soto*, 310 Kan. at 253. "The law of the case doctrine is a common-law rule in Kansas. Under the doctrine, '[w]hen a second appeal is brought . . . , the first decision is the settled law of the case on all questions involved in the first appeal" and will be reconsidered only if it is clearly erroneous or would cause manifest injustice. See *State v. Cheeks*, 313 Kan. 60, 66, 482 P.3d 1129 (2021). "[T]he doctrine is ""not an inexorable command,'" nor is it a constitutional requirement.' [Citation omitted.]" 313 Kan. at 66.

When interpreting the mandate rule, our duty is to consider the reasons for the rule: the finality of judgments and the hierarchy of our justice system. Without such a rule, litigation would be never-ending. Parties could, on remand, try to amend their claims to allege new theories and avoid application of an unfavorable holding, creating "an unworkable cycle of claims, appeal, remand, amendment, and appeal with no end to the litigation." *Fawcett Trust*, 58 Kan. App. 2d at 861.

The mandate rule prevents the district court on remand from acting contrary to an appellate court opinion when an issue has been finally settled. But the mandate rule does not prevent a district court from taking whatever other action necessary to dispose of a case. A district court must not only do as the mandate directs but also take whatever steps necessary to settle any other outstanding issues in the case untouched by the appellate proceedings. *Fawcett Trust*, 58 Kan. App. 2d at 862.

13

When the appellate mandate merely reverses the ruling of the district court and remands the case for further proceedings but does not direct the judgment of the district court, the district court retains the discretion to preside over any remaining trial proceedings, as though the district court had originally made the ruling mandated by the appellate court. The district court may address the issues necessary to resolving the case left open by the appellate court's mandate. *Leffel*, 47 Kan. App. 2d at 16.

While most caselaw addresses the effect of a mandate on the district court, the same rules apply to agencies on remand. See 47 Kan. App. 2d at 16.

      1.      *Following instructions on remand*

In its original order, the Commission found it lacked the authority under K.S.A. 66-154a to grant the SWKIs their desired remedy. On appeal, the panel disagreed and held: "Thus, it appears that the Commission erred in relying on K.S.A. 2016 Supp. 66-154a in evaluating Anadarko's obligations to the SWKIs." *SWKI*, 2018 WL 385692, at *6. Grounding its reasoning in *Sunflower Pipeline Co. v. State Corporation Commission*, 5 Kan. App. 2d 715, 624 P.2d 466 (1981), the panel determined that, under K.S.A. 66-101, "the Commission had the statutory authority 'as a means of . . . enforcing its power to regulate rates' to determine appropriate remedies for violations of approved tariffs, including ordering refunds to customers charged rates higher than those authorized by the utility's filed tariff. 5 Kan. App. 2d at 719-20." *SWKI*, 2018 WL 385692, at *13.

The panel found that the question was whether K.S.A. 66-1,205 applies when a party complains that a public utility violated the requirement of K.S.A. 66-1,203 that natural gas utilities publish and file all schedules of rates and contract for services with the Commission. *SWKI*, 2018 WL 385692, at *7; see K.S.A. 66-1,203. K.S.A. 66-1,205(a) grants the Commission the authority to investigate and order a remedy against any natural gas public utility that charges rates that are "unreasonable, unfair, unjust,

14

unjustly discriminatory or unduly preferential . . . ." The panel noted that Kansas caselaw "has often equated 'unreasonableness' in rates to unlawful rates." *SWKI*, 2018 WL 385692, at *8. The panel reasoned:

"A complaint which reports that a public utility's rates or regulations are unlawful is consistent with asserting that such rates are unreasonable, unfair, or unjust. This broad reading of K.S.A. 66-1,205 is also consistent with K.S.A. 66-1,207 which, like many similar statutes governing the Commission's authority, requires that statutory provisions granting the Commission power 'shall be liberally construed, and all incidental powers necessary to carry into effect the provision of this act are expressly granted to and conferred upon the commission.' [Citations omitted.]" 2018 WL 385692, at *9.

The panel held the Commission erred in concluding the SWKIs' allegation that the gas service agreements were illegal because they were not filed with the Commission was a failure to state a claim upon which relief could be granted. 2018 WL 385692, at *9.

On remand, the Commission again stated the SWKIs never alleged the rates in the two gas service agreements were "unreasonable, unfair, unjust, unjustly discriminatory, or unduly preferential." The Commission found that since there was no allegation or evidence of unreasonable, unfair, unjust, unjustly discriminatory, or unduly preferential rates, the Commission had no authority to adjust the rates in the gas service agreements. The Commission also found giving the SWKIs a refund would be the equivalent of adjusting the rates and was outside the Commission's authority.

We are forced to conclude the Commission disregarded the prior panel's holding by continuing to find it could not grant a remedy under K.S.A. 66-154a. Its finding that the SWKIs did not allege the rates in the gas service agreements were unreasonable, unfair, or unjust directly contradicts the panel's holding that alleging the rates were unlawful is consistent with alleging the rates were unreasonable, unfair, or unjust. The panel held the Commission had the inherent power under K.S.A. 66-101 to resolve the

15

SWKIs' complaint and had the authority to hear and remedy the SWKIs' claims, if the Commission believed a remedy was warranted. 2018 WL 385692, at *13. Instead, the Commission chose to find it had no authority to issue a remedy. The Commission's refusal to exercise its discretion in determining whether a remedy was warranted and instead take the position that it could not order a remedy violated the appellate mandate.

If the Commission disagreed with the panel's holding, it could have petitioned for review with the Kansas Supreme Court. It did not; thus, the Commission has waived any argument with that holding. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). The same is true for Anadarko. The Commission's finding that it lacked the authority under K.S.A. 66-154a contradicted the mandate.

We thus affirm the district court's conclusion that the Commission failed to comply with the mandate. On remand, the Commission is to comply with the appellate mandate and determine whether the SWKIs are entitled to a remedy for Anadarko's failure to register the gas service agreements, keeping in mind the prior panel's holding that a claim of illegal rates for failing to register the contracts is equivalent to a claim the rates were unreasonable, unfair, or unjust. However, we stress that a remedy is not required, and the discretion on whether to grant a remedy to the SWKIs remains with the Commission.

2.    *Evidentiary Hearing*

In their petition for judicial review, the SWKIs also objected to the Commission's refusal to hold a hearing. The district court agreed, finding K.A.R. 82-1-232(b)(2) requires the Commission to hold a hearing. The district court found the provisions of KAPA applied rather than the non-KAPA provision in K.A.R. 82-1-232(b)(1) because the Commission's first discovery and protective order specifically mentioned KAPA. The Commission's discovery and protective order filed after the remand from this court also

16

provided the parties the opportunity to file a petition for reconsideration pursuant to KAPA.

Curiously, the Commission does not challenge the district court's ruling on this issue. Typically, issues not raised on appeal are deemed waived or abandoned. *Arnett*, 307 Kan. at 650. By not challenging that portion of the district court's ruling, we would normally construe the Commission's position as abandoning any challenge to the district court's order that it conduct a hearing.

However, Anadarko does argue the district court erred in ordering a hearing. Anadarko asserts the text of K.S.A. 66-1,205(a) requires the Commission to hold a hearing only if the Commission is issuing an order changing rates, rules and regulations, practices, or acts that were complained about.

This issue requires statutory interpretation, which presents a legal question subject to de novo review. When interpretating a statute, we first attempt to divine "legislative intent through the statutory language, giving common words their ordinary meanings." *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

K.S.A. 66-1,205(a) grants the Commission the authority to act when a complaint alleges that any rates from a natural gas public utility "are in any respect unreasonable, unfair, unjust, unjustly discriminatory or unduly preferential, or both . . . ." The subsection goes on to instruct:

> "No order changing such rates, rules and regulations, practices or acts complained of shall be made or entered by the commission without a formal public hearing in accordance with the provisions of the Kansas administrative procedure act, of which due notice shall be given by the commission to such natural gas public utility or to such complainant or complainants, if any." K.S.A. 66-1,205(a).

17

Anadarko argues the Commission is not required to hold a hearing because the statute only requires a hearing when the Commission is changing rates, something not happening here. However, Anadarko's argument ignores the prior panel's holding that the SWKIs could bring their claim under K.S.A. 66-1,205(a) because the allegation that the rates were illegal was the same as alleging the rates were unreasonable, unfair, or unjust. *SWKI*, 2018 WL 385692, at *9. So, just like an order changing an unreasonable rate, any finding that Anadarko should compensate the SWKIs for illegal rates would require a hearing be performed.

Moreover, the Commission's own regulations appear to require a hearing. The district court noted the difference between the two provisions that guide when orders are issued without a hearing. The first, K.A.R. 82-1-232(b)(1), addresses non-KAPA proceedings:

"(1) Non-KAPA proceeding. If the commission has not used KAPA to govern the conduct of a proceeding and a decision or order is rendered without a hearing, any party affected by the order or decision and deeming it to be improper, unreasonable, or contrary to law may apply, by petition, for a hearing on the matter before the commission. The petition shall contain a statement of every ground of objection that the petitioner will raise against the decision or order. The petition for a hearing may be granted or denied by the commission. If a hearing is granted, it shall be subject to the commission's rules and regulations. If a hearing is denied, the denial shall be construed as a denial of a petition for reconsideration on the matter for purposes of an application for judicial review of the order or decision."

K.A.R. 82-1-232(b)(2)(A) addresses KAPA proceedings:

"(2) KAPA proceeding. (A) Orders may be issued without hearing in summary proceedings pursuant to KAPA. Any order issued in a summary proceeding shall disclose that any party may file a petition requesting a hearing within 15 days after service of an order."

18

K.S.A. 66-1,205(a) only addresses when the Commission must hold a hearing. It does not direct when the Commission can refuse to hold a hearing. K.A.R. 82-1-232(b) provides additional regulations for when the Commission must hold an evidentiary hearing.

The Commission's order shows it was proceeding in this case under KAPA. Its first discovery and protective order instructed the prehearing officer to conduct any prehearing conferences necessary to address anything appropriately considered in a prehearing conference, "including all items listed in K.S.A. 77-517(b) of [KAPA]." On remand, the Commission again cited to KAPA in a discovery and protective order when instructing the parties they had 15 days to file a petition to reconsider the order.

The Commission's discovery and protective orders show it was proceeding under KAPA, triggering the application of K.A.R. 82-1-232(b)(2)(A) and requiring the Commission to inform the SWKIs they could petition for a hearing within 15 days of the Commission's order on contract status. The Commission did not perform its duty. Yet, the SWKIs still requested an evidentiary hearing in their petition for reconsideration, filed exactly 15 days after the order. The Commission denied that request in its order denying reconsideration.

Under the Commission's regulations, the SWKIs were entitled to request a hearing. The district court was correct in finding the Commission should have held an evidentiary hearing.

### 3. *Filed Rate Doctrine*

The district court also found the Commission violated the mandate by not applying the filed rate doctrine. The filed rate doctrine, at its base, "'forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal

19

regulatory authority.' *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577, 101 S. Ct. 2925, 69 L. Ed. 2d 856 (1981)." *SWKI*, 2018 WL 385692, at *9. In Kansas, K.S.A. 66-109 codifies the filed rate doctrine, which forbids common carriers and public utilities to "charge, demand, collect or receive a greater or less compensation . . . than is specified in the printed schedules or classifications" required by the Commission.

> "The filed rate doctrine serves a two-fold purpose. First, it protects the regulatory agency's primary jurisdiction to determine the reasonableness of rates charged by regulated industries. Second, the doctrine ensures that regulated companies charge only those rates which the agency has approved. Thus, courts lack authority to impose or enforce a different rate than that approved by the regulatory agency . . . . The doctrine also prohibits agencies from *retroactively* substituting a new rate. [Citations omitted.]" 2018 WL 385692, at *9.

The district court found the filed rate doctrine applied. The Commission argues the prior panel never made that finding and there are multiple methods to address this claim; therefore, it did not err in not applying the filed rate doctrine.

The prior panel recognized this case presented the unique question of whether the filed rate doctrine applied when there was no filed rate. 2018 WL 385692, at *11. The panel analyzed two cases: *Michigan Elec. Transmission Co. v. Midland Cogenerations Venture, Ltd. Partnership*, 737 F. Supp. 2d 715 (E.D. Mich. 2010), and *Carolina Power & Light Company*, 87 FERC ¶ 61,083, 199 WL 219889 (1999). *SWKI*, 2018 WL 385692, at *11-12. The panel held those cases "support the proposition that in the absence of a filed rate, should the appropriate regulatory agency deem the rate reasonable, the time value of the money collected from the unfiled rate is a permissible remedy available under a regulatory agency's broad powers to set and approve rates." 2018 WL 385692, at *13.

While the panel did not specifically require the Commission to apply the filed rate doctrine, it did hold that where no filed rate existed, if the rate used by the parties is deemed to be reasonable, the time value of money collected from the unfiled rate is a permissible remedy. 2018 WL 385692, at *13. The Commission found the rate was reasonable but did not address the appropriateness of a remedy based on the time value of money. The Commission's failure to address the possible remedy violated the panel's mandate.

The Commission did not address the possibility of a remedy because it believed it lacked the authority. Again, this is directly contrary to the panel's finding that the Commission had the authority under its power to regulate gas service agreements. 2018 WL 385692, at *13. On remand, the Commission should address the filed rate doctrine and consider to what extent the time value of money may be an appropriate remedy.

The panel gave the Commission two directions:  First, to determine whether Anadarko ever filed the gas service agreements and if the Commission approved those agreements; and second, if they were not filed and approved, to determine, in its discretion, whether the SWKIs were entitled to a remedy for Anadarko's violations. 2018 WL 385692, at *14. The Commission complied with the first direction but not the second. Instead, the Commission ignored the mandate and continued to find it lacked the authority to order a remedy under K.S.A. 66-154a. On remand, we order the Commission to address the panel's second direction under the Commission's inherent authority to regulate under K.S.A. 66-101. If it determines a remedy is appropriate, the Commission should apply the time value of money. However, we again emphasize that the Commission is not required to order a remedy. Nevertheless, the Commission must exercise its discretionary authority to determine whether the SWKIs are entitled to a remedy.

21

III.    DID THE DISTRICT COURT ERR IN IGNORING CONTRACTUAL LANGUAGE
        REQUIRING ARBITRATION IN TEXAS?

Finally, both the Commission and Anadarko argue the district court erred by ignoring language in the gas service agreements requiring any dispute to be arbitrated in Texas under Texas law. The Commission asserts it lacked the authority to grant the SWKIs the equitable relief they were seeking and the proper forum for that is arbitration in Texas. The Commission alleges the forum selection clause is binding on the parties and the district court judgment should be reversed under K.S.A. 77-621(c)(4).

The SWKIs respond that its complaint is not a contractual dispute but an allegation that the gas sales agreements violated Kansas law because Anadarko did not register the contracts with the Commission. The SWKIs assert the Commission has the legal authority to grant a remedy under an allegation that the rates were illegal. The SWKIs also assert they are not seeking equitable relief but a remedy under the Commission's authority to regulate, set, and approve rates.

*Standard of Review*

Resolution of this issue, at least in part, requires interpretation of the arbitration provisions in the gas sales agreements. Our review over the interpretation of a contract is de novo because it involves a legal question. *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016). The primary rule for interpreting written contracts is to determine the parties' intent. If the contract language is clear, the parties' intent is determined from the contract's language without applying rules of construction. If the language is ambiguous, courts may use extrinsic or parol evidence to construe the contract. *Russell v. Treanor Investments*, 311 Kan. 675, 680, 466 P.3d 481 (2020).

22

*Analysis*

Forum-selection clauses are enforceable unless enforcement is unreasonable and unjust or the clause is invalid for such reasons as fraud or overreaching. *Vanier v. Ponsoldt*, 251 Kan. 88, 100, 833 P.2d 949 (1992). But that is only an issue if the forum-selection clause is triggered. A review of the record shows the arbitration in Texas requirement is not at issue because there was no actual contractual dispute. Instead, the SWKIs challenged the legality of the rates because Anadarko never filed the gas sales agreements with the Commission. The SWKIs do not take issue with the terms of the contracts but, instead, claim that under Kansas law those agreements must be filed with the Commission and the rates approved by the Commission.

The 1998 and 2002 gas sales agreements contained identical arbitration provisions:

> "Any dispute arising out of or relating to this Agreement or the breach, termination or validity thereof, shall be finally settled by arbitration conducted expeditiously in accordance with the Center for Public Resources Rules for Non-Administered Arbitration of Business Disputes by three independent and impartial arbitrators, of whom each party shall appoint one. The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. Section 1-16, as same may be amended from time to time, and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The place of arbitration shall be in Houston, Texas. The arbitrators are not empowered to award incidental, consequential, indirect, special, punitive or exemplary damages, and each party hereby irrevocably waives any damages other than actual direct damages."

The prior panel did not address the arbitration section in its opinion, but the Commission addressed it on remand. The Commission found the gas service agreements were valid because the contracts were fully performed. The Commission stated the

SWKIs were seeking equitable relief and, if the rates were already just and reasonable, the Commission could not provide the relief sought. The Commission noted the parties agreed any disputes would be settled through arbitration in Houston, Texas. The Commission stated: "Since the GSAs are governed by Texas law, any claim for equitable relief arising out of or relating to the GSAs is, in accordance with the terms of the GSAs, properly brought in Texas."

The district court rejected the Commission's reasoning and found the Commission could not now conclude the only remedy in the case was equitable in nature and that any claim must be brought before arbitrators in Texas.

From the beginning, the SWKIs have stated that their complaint is not a contract dispute. The SWKIs have not challenged any provision of the gas sales agreements, nor have they asserted Anadarko violated the contracts. Instead, the SWKIs sought a remedy for Anadarko's failure to register the gas sales agreements with the Commission or receive the Commission's approval of the contract rates as required by Kansas law. Thus, the dispute goes to the Commission's authority to regulate the industry under Kansas law, not the terms of the contracts.

The arbitration provisions in the gas sales agreements do not apply to this dispute. As such, the district court was correct to find the Commission erred in finding any remedy must come from arbitration in Texas.

Affirmed and remanded to the Commission with directions.