IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,621

STATE OF KANSAS,
*Appellee*,

v.

JEROME CHEEKS,
*Appellant.*

SYLLABUS BY THE COURT

1.

The law of the case doctrine is a common-law rule in Kansas. Under the doctrine, when a second appeal is brought to this court in the same case, the first decision is the settled law of the case on all questions involved in the first appeal, and reconsideration will not normally be given to such questions.

2.

The law of the case doctrine is not an inexorable command, nor is it a constitutional requirement, and courts recognize exceptions to its application when (1) a subsequent trial produces substantially different evidence, (2) a controlling authority has made a contrary decision regarding the law applicable to the issues, or (3) the prior decision was clearly erroneous and would work a manifest injustice.

3.

Unlike the law of the case doctrine, the mandate rule is a statutory imperative that requires lower courts follow the mandates issued by appellate courts.

4.

Kansas cases have not recognized the power of a district court to unilaterally depart from the mandate, even when a change in the law has occurred.

5.

When an intervening change in law causes the district court to conform to new precedent and deviate from a prior appellate mandate, the judgment of the district court will typically be affirmed, notwithstanding any technical violation of the mandate rule, because it would be futile for the appellate court to reverse the district court for violating the mandate rule when the district court would be obligated to apply the controlling precedent on remand.

Appeal from Wyandotte District Court; JENNIFER L. MYERS, judge. Opinion filed March 19, 2021. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, argued the cause and was on the briefs for appellant.

*Daniel G. Obermeier*, assistant district attorney, argued the cause, and *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

WALL, J.:  A jury convicted Jerome Cheeks for the second-degree murder of his wife in 1993. In 2009, Cheeks filed a motion seeking postconviction DNA testing pursuant to K.S.A. 21-2512. This statute authorizes individuals who have been convicted of first-degree murder or rape to petition for such testing, subject to other eligibility factors identified in the statute. The district court summarily rejected Cheeks' motion because he was convicted of neither offense.

This court reviewed the district court's decision in *State v. Cheeks*, 298 Kan. 1, 310 P.3d 346 (2013) (*Cheeks I*). Based on the punishment imposed for Cheeks' second-degree murder conviction, *Cheeks I* held that he was similarly situated to other defendants convicted for murder in the first degree, and it concluded that the Legislature had no rational basis to distinguish between these two classes of defendants in determining eligibility for postconviction testing. 298 Kan. at 5, 11-14. Thus, the court held that Cheeks' exclusion from K.S.A. 21-2512 violated the Fourteenth Amendment's Equal Protection Clause. 298 Kan. at 2.

However, in 2019, while Cheeks' motion was still pending in the district court, this court decided *State v. LaPointe*, 309 Kan. 299, 434 P.3d 850 (2019). *LaPointe* overruled *Cheeks I*, including its equal protection rationale for extending K.S.A. 21-2512 to Cheeks based on his life sentence for second-degree murder. 309 Kan. at 301. Relying on *LaPointe*, the district court again denied Cheeks' motion for postconviction testing.

In his appeal of that decision, Cheeks now contends the mandate rule required the district court to turn a blind eye to *LaPointe* and grant him postconviction DNA testing under the rationale in *Cheeks I*. Yet, there can be no dispute that *LaPointe* is binding precedent, and it overrules *Cheeks I*. Thus, it would be futile to reverse and remand this matter to the district court for failing to adhere to prior appellate mandates when *LaPointe* inevitably controls the ultimate disposition of Cheeks' motion on remand under K.S.A. 21-2512. We therefore affirm the district court's denial of Cheeks' motion for postconviction DNA testing.

FACTUAL AND PROCEDURAL BACKGROUND

The litigation in this case up until 2015 can be summarized as follows:

3

"Cheeks was convicted in 1993 of the second-degree murder of his wife. Cheeks received a prison sentence of 15 years to life imprisonment. This court affirmed his case on direct appeal. *State v. Cheeks*, 258 Kan. 581, 908 P.2d 175 (1995). We also affirmed a later district court denial of Cheeks' pro se motion to correct an illegal sentence. *State v. Cheeks*, 280 Kan. 373, 121 P.3d 989 (2005).

"In March 2009, Cheeks filed a pro se petition for postconviction DNA testing under K.S.A. 21-2512. The petition was summarily denied because the statute limited the availability of such testing to cases involving convictions of first-degree murder under K.S.A. 21-3401 or of rape under K.S.A. 21-3502. Cheeks appealed to this court and prevailed. *State v. Cheeks*, 298 Kan. 1, 3, 310 P.3d 346 (2013). [This court] extended K.S.A. 21-2512 to Cheeks and other similarly situated individuals under the authority of the Equal Protection Clause of the United States Constitution. 298 Kan. at 11." *State v. Cheeks*, 302 Kan. 259, 259, 352 P.3d 551 (2015) (*Cheeks II*).

On remand from *Cheeks I*, the district court found that Cheeks had been released from prison and, therefore, no longer satisfied the "in state custody" requirement for postconviction testing. In the 2015 appeal from that district court decision, our court held that because "Cheeks remained in prison at the time his K.S.A. 21-2512 petition for DNA testing was filed, he was 'in state custody' at the relevant time." *Cheeks II*, 302 Kan. at 261. This court remanded Cheeks' motion to the district court for a second time in June 2015. 302 Kan. at 261.

Before the district court could hold a hearing on the second remand, this court issued its decision in *State v. LaPointe*, where it "overrule[d] *Cheeks I* to the extent it held the sentence imposed determines whether an offender is similarly situated to a person to whom postconviction DNA testing is statutorily available." *LaPointe*, 309 Kan. at 318.

On February 25, 2019, the district court held the second remand hearing. Cheeks argued that *LaPointe* did not require the court to deny the motion for four reasons. First,

he argued that *LaPointe* is not retroactive. Second, he argued the holding in *LaPointe* did not mean Cheeks himself was not similarly situated to individuals convicted of first-degree murder, because Cheeks received a "15 to life" sentence. Third, he argued that "under due process, any defendant who is convicted who does not have access at the time of his conviction to DNA . . . testing should be allowed to seek that kind of testing post conviction." Finally, Cheeks argued that the law of the case doctrine meant that his motion should be granted despite the new *LaPointe* opinion.

The State argued *LaPointe* foreclosed Cheeks' pursuit of postconviction testing. The State also clarified that this resolution would not require the district court to improperly apply *LaPointe* retroactively because Cheeks' motion was still pending when this court issued *LaPointe*.

On February 28, 2019, the district court denied Cheeks' motion, citing *LaPointe*. Cheeks appeals the denial.

ANALYSIS

This case centers on Kansas' postconviction DNA testing statute, K.S.A. 21-2512. The pertinent language of the statute has not changed since Cheeks first filed his motion in 2009. It provides:

> "(a) Notwithstanding any other provision of law, a person in state custody, at any time after conviction for murder in the first degree as defined by K.S.A. 21-3401, prior to its repeal, or K.S.A. 2020 Supp. 21-5402, and amendments thereto, or for rape as defined by K.S.A. 21-3502, prior to its repeal, or K.S.A. 2020 Supp. 21-5503, and amendments thereto, may petition the court that entered the judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:

5

(1) Is related to the investigation or prosecution that resulted in the conviction;

(2) is in the actual or constructive possession of the state; and

(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.

. . . .

"(c) The court shall order DNA testing pursuant to a petition made under subsection (a) upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongly convicted or sentenced." K.S.A. 2020 Supp. 21-2512.

On appeal, Cheeks contends that the law of the case doctrine and the mandate rule require the district court to grant his motion for DNA testing. These arguments first require closer examination of the mandates in *Cheeks I* and *Cheeks II* and the intervening holding in *LaPointe*. Then, we can fully assess the merits of Cheeks' arguments under the law of the case doctrine and mandate rule.

*Prior Mandates and Controlling Precedent*

In 2013, this court considered Cheeks' first appeal of the district court's denial of his motion for DNA testing. There, "the district court summarily rejected Cheeks' petition based on the face of the statute," so "the court made no findings regarding the three statutory requirements of K.S.A. 21-2512(a)." *Cheeks I*, 298 Kan. at 4. A divided court held that K.S.A. 21-2512 violated the Fourteenth Amendment to the United States Constitution's guarantee of equal protection. 298 Kan. at 2.

The majority "agree[d] with Cheeks that while our decision in [*State v.*] *Salas*[, 289 Kan. 245, 210 P.3d 635 (2009),] foreclosed an equal protection challenge to [K.S.A. 21-2512] based on the elements of first- and second-degree murder, it left open the possibility of an equal protection challenge based on the punishment imposed for those two crimes." *Cheeks I*, 298 Kan. at 6. In his brief, Cheeks "frame[d] his 'similarly situated' analysis on the punishment imposed for the crime—not the elements of the crime or the conduct that violates those elements." 298 Kan. at 6. He argued that "individuals convicted of second-degree murder and sentenced to the maximum sentence of 15 years to life under the indeterminate sentencing scheme existing before the enactment of the KSGA [Kansas Sentencing Guidelines Act] are similarly situated to individuals convicted of first-degree murder and sentenced prior to the KSGA." 298 Kan. at 7.

The majority held that no rational basis "explain[ed] the legislature's decision to permit individuals convicted of rape and first-degree murder to petition for DNA testing but to deny that same opportunity to individuals convicted of second-degree murder and sentenced to 15 years to life imprisonment"; because of this, K.S.A. 21-2512 violated the Equal Protection Clause. 298 Kan. at 11. Therefore, the majority held that Cheeks was entitled to a remand to the district court for a hearing to determine whether he could establish those statutory requirements. 298 Kan. at 14.

Cheeks was released from prison and placed on lifetime parole while *Cheeks I* was pending. *Cheeks II*, 302 Kan. at 259. On remand from *Cheeks I*, the district court again denied the motion, concluding that Cheeks did not satisfy the "in state custody" requirement of K.S.A. 21-2512 because he was on parole. 302 Kan. at 260. Cheeks appealed this denial. In *Cheeks II*, this court again reversed the district court, this time holding that Cheeks satisfied the "in state custody" requirement because he was in prison when he filed the motion in 2009. 302 Kan. at 261. This court remanded "so that the merits of the petition may be considered." 302 Kan. at 261.

However, on February 15, 2019, this court issued its decision in *LaPointe*. There, a jury convicted defendant Jack LaPointe of aggravated robbery and aggravated assault. A district court granted LaPointe's postconviction motion for DNA testing. On appeal, this court considered the State's reserved question of whether LaPointe was eligible for postconviction DNA testing under K.S.A. 21-2512. To do so, it had to revisit *Cheeks I*.

In *LaPointe*, this court observed that, in *Cheeks I*, "[a] court majority decided to base its analysis on the punishment meted out" when conducting the equal protection analysis. 309 Kan. at 316. *LaPointe* rejected this framework and "overrule[d] *Cheeks I* to the extent it held the sentence imposed determines whether an offender is similarly situated to a person to whom postconviction DNA testing is statutorily available." 309 Kan. at 318. Having rejected the "punishment" approach to equal protection analysis, *LaPointe* instead endorsed the "elements approach" from *State v. Denney*, 278 Kan. 643, 652-54, 101 P.3d 1257 (2004). *LaPointe*, 309 Kan. at 319. Under the "elements approach," courts "must first examine the two crimes [(1) the crime the moving defendant was convicted of and (2) a crime statutorily provided in K.S.A. 21-2512] to determine if, under the facts of the instant case, they are 'arguably indistinguishable.'" *Denney*, 278 Kan. at 652. Under the elements approach, Cheeks' crime of second-degree murder is not similarly situated to the crime of first-degree murder. *Salas*, 289 Kan. at 251. In short, *LaPointe* and *Salas* confirm that Cheeks is not similarly situated to the class of individuals eligible for postconviction DNA testing under K.S.A. 21-2512. Therefore, such relief is unavailable to Cheeks both under the plain language of the statute and the Equal Protection Clause.

Read together, the letter and spirit of the mandates in *Cheeks I* and *Cheeks II* established three basic principles to guide subsequent proceedings: (1) Cheeks was part of the class eligible to petition the district court for postconviction DNA testing under K.S.A. 21-2512; (2) Cheeks satisfied the statutory "in state custody" requirement for

8

testing; and (3) the district court should conduct further proceedings to determine whether Cheeks satisfied the remaining statutory requirements for testing. However, our intervening decision in *LaPointe* abrogated the basic principles established through these mandates and left the district court in the unenviable position of deciding whether to apply *LaPointe* over the prior appellate mandates.

*The District Court Did Not Violate the Law of the Case Doctrine*

Cheeks first argues that the district court was obligated to grant his motion because of the law of the case doctrine. We are unpersuaded by this argument.

The law of the case doctrine is a common-law rule in Kansas. See *State v. Collier*, 263 Kan. 629, 631-32, 952 P.2d 1326 (1998). Under the doctrine, "[w]hen a second appeal is brought to this court in the same case, the first decision is the settled law of the case on all questions involved in the first appeal, and reconsideration will not normally be given to such questions." 263 Kan. 629, Syl. ¶ 3. But the doctrine is "'"not an inexorable command,"' nor is it a constitutional requirement." *State v. Kleypas*, 305 Kan. 224, 245, 382 P.3d 373 (2016) (*Kleypas II*).

As Cheeks acknowledges, this court has recognized three exceptions to the law of the case doctrine.

> "These exceptions apply when (1) a subsequent trial produces substantially different evidence, (2) a controlling authority has made a contrary decision regarding the law applicable to the issues, or (3) the prior decision was clearly erroneous and would work a manifest injustice." 305 Kan. at 245.

The second and third exceptions apply here. As explained above, *LaPointe* explicitly overruled *Cheeks I*, so there is now "a contrary decision" from this court

9

"regarding the law applicable to the issues." *Kleypas II*, 305 Kan. at 245. *Cheeks I* is also now "clearly erroneous" because of *LaPointe*. See *Kleypas II*, 305 Kan. at 245. Once the court issued its opinion in *LaPointe*, the law of the case doctrine no longer bound the district court to the conflicting law in *Cheeks I* and *Cheeks II*. Therefore, this doctrine does not compel the relief Cheeks seeks.

Cheeks, seemingly recognizing that these exceptions place his argument in desperate peril, also contends that "*LaPointe* operated to overrule [only] a particular part of *Cheeks I*, limited to its rationale for the decision, but not its ultimate holding as it pertains to Cheeks." He claims "*LaPointe*'s overruling of *Cheeks I* was limited to the expansion of K.S.A. 21-2512 beyond the parameters of its actual ruling." This is incorrect. As detailed above, the holding in *Cheeks I* hinged exclusively on Cheeks' argument that the punishment he received for committing second-degree murder made him similarly situated to first-degree murder defendants for purposes of equal protection analysis. *Cheeks I*, 298 Kan. at 6. *LaPointe* explicitly overruled this punishment-based approach in favor of the elements-based approach from *Denney*. *LaPointe*, 309 Kan. at 318. In sum, *LaPointe* eliminated the only leg upon which *Cheeks I* stood. Without it, Cheeks' claim of right to postconviction DNA testing under the Due Process Clause necessarily fails.

*The Mandate Rule Does Not Compel Reversal*

In Kansas, unlike the law of the case doctrine, the mandate rule is a statutory imperative that requires lower courts follow the mandates issued by appellate courts. It derives from two different statutes.

K.S.A. 20-108 provides that:

> "An appellate court of this state may require the district court of the county where any action or proceeding shall have originated to carry the judgment or decree of the appellate court into execution; and the same shall be carried into execution by proper proceedings, by such district court, according to the command of the appellate court made therein."

Additionally, K.S.A. 60-2106(c) provides that an appellate court's "mandate and opinion, without further order of the judge, shall thereupon be a part of the judgment of the court if it is determinative of the action, or shall be controlling in the conduct of any further proceedings necessary in the district court."

> "Under the plain language of these statutes, a district court is required to apply the mandate without exception. The *Collier* court made this point emphatically, stating: 'It is axiomatic that on remand for further proceedings after a decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal.' [Citations omitted.]" *Kleypas II*, 305 Kan. at 297.

*Preservation*

Before turning to the merits of Cheeks' argument, we must first address the State's preservation challenge. The State contends Cheeks did not preserve this issue for appeal by raising it below. In response, Cheeks highlights the following argument he made to the district court:

> "My argument on point number one, therefore, is that, at some point, the Supreme Court in 2013 told this District Court to consider the motion for DNA testing for my client. That hasn't been done yet. I'm asking the Court to still hear that motion

11

because of the Supreme Court's ruling back then and the *LaPointe* decision did not state that we are specifically stating that this is retroactive and applies to *Cheeks I*. That's point number one."

While this statement does not expressly reference the mandate rule by name, Cheeks' argument certainly describes the operation and one possible application of the mandate rule to this case. Moreover, we have acknowledged that the mandate rule and law of the case doctrine are conceptually related. *Collier*, 263 Kan. at 636 (explaining similarities between "mandate rule" and "law of the case doctrine"). There is no question Cheeks preserved the law of the case issue for appeal. Together, Cheeks' argument, coupled with his preservation of the law of the case doctrine, is sufficient to preserve the issue for this court's review.

*Application of the Mandate Rule Following an Intervening Change in Law*

Here, Cheeks argues the mandate rule compelled the district court to disregard *LaPointe* and apply the mandates of his prior appeals. As discussed above, when viewed in isolation, the mandates of *Cheeks I* and *Cheeks II* established that the punishment Cheeks received for second-degree murder placed him within the class of individuals eligible to petition the court for postconviction DNA testing and such relief should be granted if he satisfies the remaining statutory requirements for testing.

Of course, these mandates fail to account for the intervening decision and holding in *LaPointe*. Even so, Cheeks' argument is not devoid of merit, notwithstanding the intervening change in law. Cheeks relies extensively on the pronouncement in *Kleypas II* that "Kansas cases have not recognized the power of a district court to unilaterally depart from the mandate, even when a change in the law has occurred." *Kleypas II*, 305 Kan. at 297. More recently, we reiterated a similar principle in *Building Erection Svcs. Co. v. Walton Construction Co.*, 312 Kan. 432, Syl. ¶ 1, 475 P.3d 1231 (2020), explaining that

12

"[w]hile different panels of the Court of Appeals hearing successive appeals in the same case may, in exceptional circumstances, depart from the law of the case, under Kansas law no exceptional circumstances permit a lower court to circumvent the mandate of a higher court."

In light of these pronouncements, we assume without deciding that the district court erred and violated the letter and spirit of the prior appellate mandates by concluding that Cheeks did not fall within the class of individuals eligible to petition for the testing contemplated in K.S.A. 21-2512, notwithstanding the intervening decision in *LaPointe*. See *Kleypas II*, 305 Kan. at 297 ("given the posture of the mandate in this case, if the district court failed to follow our mandate in *Kleypas I*, it erred"). Assuming such error, we proceed to the reversibility analysis.

In *Kleypas II*, the defendant argued the district court committed reversible error by giving a jury instruction that violated the mandate of *Kleypas I*. Indeed, the instruction did violate the mandate of *Kleypas I*. However, in an intervening decision, *Kansas v. Marsh*, 548 U.S. 163, 173, 126 S. Ct. 2516, 165 L. Ed. 2d 429 (2006), the United States Supreme Court abrogated the holding of *Kleypas I*. *Kleypas II*, 305 Kan. at 293-94. In other words, the district court's instruction conflicted with the mandate in *Kleypas I* but was legally correct under the controlling precedent established by the intervening decision in *Marsh*. This court held the district court's deviation from the mandate rule constituted error in a technical sense and assumed, without deciding, that the constitutional harmless error standard applied to the reversibility inquiry. See *Kleypas II*, 305 Kan. at 300. Even so, *Kleypas II*, relying on the concept of futility, held that the error was not reversible. More specifically, there was no reasonable possibility that the district court's deviation from the mandate in *Kleypas I* affected the outcome of the trial because, had this court reversed for a new trial, the holding in *Marsh* obligated the district court to give the same, legally correct instruction to the jury at the new trial. 305 Kan. at 300.

13

*Kleypas II* highlights the dilemma a district court faces when an intervening change in law undermines a previous mandate of the appellate court: A district court must either comply with the mandate and risk reversal for failing to adhere to controlling precedent, or comply with the intervening precedent and risk reversal for deviating from the mandate rule. *Kleypas II* clarifies that notions of futility and judicial economy favor the latter approach. "In that circumstance, courts usually view reversibility in light of the futility of remanding a case following a trial court's failure to follow a mandate inconsistent with controlling precedent." *Kleypas II*, 305 Kan. at 298.

> "'[I]t seems quite obvious . . . the judgment of the trial court will be affirmed notwithstanding that court's departure from the appellate court's mandate on a former appeal, since it would be futile for the appellate court to reverse the trial court because of its departure from the appellate court's ruling on a former appeal and at the same time to direct the trial court to render the same judgment again after the appellate court has itself corrected its error.' Annot., 87 A.L.R.2d 271 § 10." 305 Kan. at 298.

Applying this principle to the case at hand, we hold that even assuming the district court's decision to embrace *LaPointe* over the prior mandates of *Cheeks I* and *Cheeks II* could be characterized as error (a characterization that hardly acknowledges the complexity of the circumstances and the predicament of the district court), the remedy would require us to remand the case to the district court for another proceeding. But in this calculus, we necessarily have to consider that the *LaPointe* decision settled the question regarding Cheeks' right to petition for DNA testing. Like the legally correct jury instruction in *Kleypas II*, we hold that the district court's deviation from the mandates of *Cheeks I* and *Cheeks II* was not reversible error because a district court would be obligated to apply controlling precedent—in this case, *LaPointe*—on remand.

For these reasons, we affirm the district court's denial of Cheeks' motion for postconviction DNA testing.

\* \* \*

LUCKERT, C.J., dissenting:  The majority overreads the extent to which *State v. LaPointe*, 309 Kan. 299, 434 P.3d 850 (2019), overrules *State v. Cheeks*, 298 Kan. 1, 310 P.3d 346 (2013) (*Cheeks I*). This is understandable, as the majority in *LaPointe* alternates between language that suggests it completely overrules *Cheeks I* and language more limited in scope. Compare *LaPointe*, 309 Kan. at 301 ("[W]e overrule [*Cheeks I*], which expanded postconviction DNA testing.") with 309 Kan. at 318 ("We overrule *Cheeks I to the extent* it held the sentence imposed determines whether an offender is similarly situated to a person to whom postconviction DNA testing is statutorily available." [Emphasis added.]) and 309 Kan. at 319 ("We overrule *Cheeks I as explained.*" [Emphasis added.]) *LaPointe*'s concurring opinion predicted the confusion that would result from these varying statements, and that confusion comes home to roost in today's majority opinion.

Seeking to stave off this result, I joined Justice Beier's concurring opinion in *LaPointe*, 309 Kan. at 320. She pointed out that it was unnecessary to overrule *Cheeks I*, as the majority purported to do, because, "Under an Equal Protection analysis, LaPointe was not similarly situated to defendants in first-degree murder and rape cases for which legislators wrote the DNA testing statute, and its provisions should not be extended to him." *LaPointe*, 309 Kan. at 320 (Beier, J., concurring). The majority here fails to heed this call for a restrained reading of the *LaPointe* majority's holding and accordingly errs in concluding *LaPointe* overruled *Cheeks I* wholesale, rendering the *Cheeks I* decision "clearly erroneous." Slip op. at 10; see slip op. at 3; *State v. Kleypas*, 305 Kan. 224, 245, 382 P.3d 373 (2016) (*Kleypas II*) (recognizing exception to law of case doctrine if "the prior decision was clearly erroneous and would work a manifest injustice").

I suggest *LaPointe* overrules *Cheeks I* only to the extent that Cheeks *I* broadly suggests *any* indeterminate sentence of 15 years to life triggers applicability for

15

postconviction DNA testing under K.S.A. 21-2512. The *Cheeks I* majority concluded that Jerome Cheeks, who was sentenced under pre-KSGA indeterminate sentencing provisions to the maximum sentence of 15 years to life for second-degree murder, was similarly situated to individuals sentenced pre-KSGA for first-degree murder. Both those convicted of first- and second-degree murder faced a minimum of 15 years without potential for good time credit because of legislative classifications that fixed the sentence based solely on the crime of conviction. Given the legislative classification, this court found defendants convicted under either statute to be similarly situated. *Cheeks I*, 298 Kan. at 7.

From an equal protection standpoint, that narrow pre-KSGA application of comparability survives *LaPointe*. There, the defendant's criminal history—rather than a legislative act preordaining the length of sentence—caused the defendant to serve a lengthy sentence comparable to that of first-degree murder. And under that narrow—and fair—reading of *LaPointe*'s holding, it did not hold that *Cheeks I* was clearly erroneous.

In summary, I respectfully dissent because the narrow holding of *Cheeks I* survives *LaPointe* and *Cheeks I* was not clearly erroneous. As applied to Cheeks himself, *Cheeks I* remains valid, and Cheeks thus remains eligible for DNA testing if he satisfied the remaining statutory requirements.

WILSON, J., joins the foregoing dissent.